UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SIMON BYWALSKI,

    *Plaintiff*,

v.

UNITED STATES OF AMERICA,

    *Defendant*.

Civil Action No. 20-265 (FYP)

## MEMORANDUM OPINION

Plaintiff Simon Bywalski submitted an application to the United States Department of State, seeking compensation for a Holocaust-related deportation on behalf of his mother's estate. Bywalski seeks a declaration that the State Department's denial of his application was arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq*. Before the Court is the United States' Motion to Dismiss, which argues that this Court lacks subject matter jurisdiction, and that Plaintiff fails to state a claim. For the following reasons, the Court will grant the Motion to Dismiss.

### BACKGROUND

**I.    Agreement between the United States and France to Compensate Victims of Holocaust-Related Deportations**

In December of 2014, the United States and France entered into an agreement to establish a compensation fund for Holocaust victims who were deported from France to Nazi concentration camps during World War II. *See* ECF No. 24-2 ("Agreement").[1] Under the

---

[1] The full name of the Agreement is the "Agreement between the Government of the United States of America and the Government of the French Republic on Compensation for Certain Victims of Holocaust-Related Deportation from France Who Are Not Covered by French Programs." *Id.*

Agreement, France was to pay $60 million to the United States to establish the compensation fund. *Id.*, Article 4(1). In exchange, the United States agreed to "recognize and affirmatively protect the sovereign immunity of France within the United States legal system with regard to Holocaust deportation claims." *Id.*, Article 2(2). The Agreement required the United States to deposit the money "in an interest-bearing account . . . until distribution, pursuant to a determination by the Secretary of State." *Id.*, Article 4(4).

The Agreement's objective is to "[p]rovide an exclusive mechanism for compensating" individuals (1) who "survived deportation from France, their surviving spouses, or their assigns" and (2) who are "not able to gain access to the pension program established by the Government of the French Republic for French nationals, or by international agreements concluded by the Government of the French Republic to address Holocaust deportation claims." *Id.*, Article 2(1). Thus, the intended beneficiaries of the Agreement are non-French nationals who were deported from France and cannot receive compensation through another Holocaust compensation program. *See id.*, Article 3.[2] The Agreement is intended to provide "an amicable, extra-judicial and non-contentious manner to address the issue of compensation for such persons." *Id.*, at ECF p. 7.

To receive compensation, applicants must execute a "Form of Written Undertaking." *Id.*, Annex; Article 5(4). The Form requires that applicants (1) declare their nationality; (2) attach a "copy of [the] government documentation establishing" their nationality; (3) waive any right to seek other compensation or relief from France or the United States for Holocaust deportation;

---

[2] Specifically, the groups that are not eligible for compensation under the Agreement are (1) French nationals; (2) nationals of other countries who "have received, or are eligible to receive, compensation under an international agreement;" (3) persons "who have received, or are eligible to receive, compensation" from the French compensation program; and (4) persons "who have received compensation under another State's program providing compensation specifically for Holocaust deportation." *Id.*, Article 3.

and (4) declare "under penalty of perjury" that they have not received compensation from any other program related to Holocaust deportation. *Id*. Other criteria for distribution are determined by the United States "unilaterally, in its sole discretion." *Id.*, Article 6(1) ("The Government of the United States of America shall distribute the sum referred to in . . . this Agreement according to criteria which it shall determine unilaterally, in its sole discretion, and for which it shall be solely responsible."). In developing criteria for distribution, the United States must "consider the objectives of [the] Agreement;" and may rely on information in the Form of Written Undertaking, "as well as on any relevant information obtained" pursuant to information sharing between the United States and France. *Id.*, Article 6(2), 6(4). Notably, the Agreement provides that "[a]ny dispute arising out of the interpretation or performance of this Agreement shall be settled exclusively by way of consultation between the Parties" to the Agreement — *i.e.*, the governments of the United States and France. *Id.*, Article 8.

## II.     Factual Background

Plaintiff Simon Bywalski's father was deported to Auschwitz on August 26, 1942, where he was killed. *See* ECF No. 21 (Amended Complaint), ¶ 9. His mother, Laja Fibich, survived and passed away in France in 1981. *Id.* Plaintiff filed a claim for compensation under the Agreement on behalf of the estate of his mother as a surviving spouse, asserting that she was stateless. *Id.*, ¶¶ 9–10. On April 11, 2018, the State Department rejected Plaintiff's application, finding that Bywalski had provided no evidence that his mother was stateless. *Id.* Bywalski alleges that the State Department exercised discretion it did not have when it rejected his claim.

*Id.*, ¶ 11.  He contends that the State Department was required to rely on the sworn statements that he provided, which asserted that his mother was stateless.  *Id.*[3]

According to Plaintiff, the State Department's rejection of his claim violates the Agreement and constitutes an arbitrary and capricious agency action under the APA.  *Id.*, ¶¶ 17–18.  Plaintiff seeks a judicial declaration that Defendant's action in denying his claim is arbitrary and capricious under the APA and the Declaratory Judgment Act ("DJA").  *Id.*, ¶ 1.[4]

### III. Procedural History

Plaintiff filed his original complaint on January 31, 2020, seeking relief under the Federal Tort Claims Act.  *See* ECF No. 1.  The United States moved to dismiss the Complaint based on a lack of subject matter jurisdiction, arguing that Plaintiff failed to establish that the United States had waived its sovereign immunity.  *See* ECF No. 12.  The Court granted Defendant's Motion to Dismiss on March 19, 2021; but allowed Plaintiff to file an Amended Complaint pursuing relief under the APA.  Plaintiff filed his Amended Complaint on March 30, 2021.  *See* Am. Compl.  Defendant's instant Motion to Dismiss the Amended Complaint asserts that this Court lacks subject matter jurisdiction because Plaintiff raises a non-justiciable political question; and that, in any event, Plaintiff fails to state a claim for relief under the Agreement and the APA.  *See* ECF No. 24 (Defendant's Motion to Dismiss the Amended Complaint).  The Motion is now ripe for decision.

### LEGAL STANDARD

### I. 12(b)(1) Standard

---

[3]  Plaintiff provided a second statement, again swearing that his mother was stateless. *Id.*, ¶ 12. Plaintiff additionally provided a letter from his counsel, Stephen Rodd, attesting to the difficulty of trying to prove statelessness. *Id.*, ¶ 14.
[4]  The Court focuses on Plaintiff's claim under the APA because "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes federal courts to grant declaratory relief as a remedy and is not, standing alone, a cause of action." *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 28 (D.D.C. 2014).

When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate by a preponderance of the evidence that the court has subject-matter jurisdiction to hear his claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). As a result, "the plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13–14 (cleaned up).

In policing its jurisdictional bounds, the court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The court, however, need not rely "on the complaint standing alone," as it may also look to undisputed facts in the record or resolve disputed ones. *See Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citations omitted). By considering documents outside the pleadings on a Rule 12(b)(1) motion, a court does not convert the motion into one for summary judgment, as "the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment" when a court considers documents extraneous to the pleadings. *Haase v. Sessions*, 835 F.2d 902, 905 (D.C. Cir. 1987) (emphasis in original).

## II. 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

5

motion, *id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor, "treat[ing] the complaint's factual allegations as true" and granting the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)); *accord Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ANALYSIS

Defendant argues that (1) there is no private right of action under the Agreement; (2) judicial review is precluded by the Agreement; (3) eligibility determinations under the Agreement are committed to agency discretion by law; and (4) Plaintiff presents a non-justiciable political question. *See generally* Def. Mot. The Court agrees that Plaintiff raises a political question that may not be reviewed by this Court. Moreover, Plaintiff fails to state a claim under the Agreement that he seeks to enforce: The Agreement does not confer a private right of action, as it commits the question of eligibility for compensation to the State Department, with any disputes to be resolved only through diplomatic channels.

**I.    Plaintiffs Raise a Non-Justiciable Question**

Defendant argues that this case is non-justiciable because Plaintiff asks the Court "to oversee the [State] Department's interpretation and implementation of an international agreement

that the executive negotiated, and second-guess the Department's determination thereunder as to whether individual claimants are eligible." *Id.* at 22. According to Defendant, these foreign policy concerns must be addressed by the executive branch, not by the judiciary. *Id.* at 17. Plaintiff responds that there is no justiciability issue because he seeks only a determination that the decision to deny his request for compensation — made internally by the State Department — was arbitrary and capricious; and the Court therefore need not wade into the murky waters of foreign affairs. *See* ECF No. 26 (Plaintiff's Opposition) at 10–12.

"[T]he political question doctrine is an aspect of 'the concept of justiciability, which expresses the jurisdictional limitations imposed on the federal courts by the 'case or controversy' requirement of Article III of the Constitution.'" *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 44 (D.D.C. 2010) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974)). Because the political question doctrine is a jurisdictional defense, the Court "must address it '*before* proceeding to the merits.'" *Jaber v. United States*, 861 F.3d 241, 245 (D.C. Cir. 2017) (emphasis in original) (quoting *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005)); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

"The political question doctrine is essentially a function of the separation of powers, and excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010) (internal citations and quotation marks omitted); *see also United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990) (stating the political question doctrine is "designed to restrain the Judiciary from inappropriate interference in the business of other branches"). The Supreme Court has identified six hallmarks of non-justiciable political questions:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962).  The Court need only "conclude that one factor is present" to find that a non-justiciable political question is raised.  *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005).  While not every case that "touches foreign relations lies beyond judicial cognizance," *Baker*, 369 U.S. at 211, the Court "must respect the constitutional bounds of the separation of powers." *Gutrejman v. United States*, No. 20-cv-266, 2022 WL 856384, at *6 (D.D.C. Mar. 22, 2022) (RDM).

Here, the Court can resolve the justiciability question by determining whether the Agreement creates any judicially enforceable rights.  If it does not, then entertaining Plaintiff's claim "risks not only intruding in the field of foreign affairs . . . but it risks aggrandizing the role of the judiciary, which can only enforce the law as prescribed by the Constitution and the political branches." *Id.*  When agreements contain "dispute resolution provisions" that are committed "solely to diplomatic channels," courts have found such agreements not enforceable in federal courts.  *See United States v. Sum of $70,990,605 ("$70 Million")*, 234 F. Supp. 3d 212, 235 (D.D.C. 2017); *Holmes v. Laird*, 459 F.2d 1211, 1222 (D.C. Cir. 1972) (stating that "when the corrective machinery specified in the [agreement] itself is nonjudicial," the courts are without power to act).

Careful review of the Agreement reveals that it does not confer any judicially enforceable rights, and Plaintiff therefore presents this Court with a non-justiciable question.  *See Gutrejman*,

8

2022 WL 856384, at *7.  The Agreement contains an "exclusive[]" provision for resolving disputes "by way of consultation between the Parties," *i.e.*, between the governments of the United States and France.  *See* Agreement, Article 8 (providing that "[a]ny dispute arising out of the interpretation or performance of this Agreement shall be settled *exclusively* by way of consultation between the Parties") (emphasis added).  Thus, it "could not be clearer" that disputes over the interpretation and application of the Agreement must occur through "diplomatic recourse" and not through litigation.  *See $70 Million*, 234 F. Supp. 3d at 234; *accord Gutrejman*, 2022 WL 856384, at *7.

The Court is unpersuaded by Plaintiff's attempt to argue that his claim is just "about an affidavit" and that he is "not suing 'under the Agreement.'"  *See* Pl. Opp. at 1–3; *see also id.* at 9 (arguing that Plaintiff merely asserts that Defendant arbitrarily and capriciously rejected his affidavits without explanation).  To the contrary, the Amended Complaint alleges that the State Department's denial "was not a *reasonable interpretation* of the Agreement."  Am. Compl., ¶ 19 (emphasis added).  Plaintiff further alleges that the "*language of the Agreement itself* was a mandate" and that the State Department failed to treat Plaintiff "in accordance with the *terms of the Agreement*."  *Id.*, ¶ 11 (emphasis added).  Thus, Plaintiff's challenge to the State Department's reason for rejecting his claim for compensation plainly presents a dispute that "arise[s] out of the interpretation or performance of [the] Agreement."  *See* Agreement, Article 8; *see also* Pl. Opp. at 12 ("Plaintiff is asking the Defendant to adhere to the purpose and language of the Agreement.").

Because the governments of the United States and France expressly agreed that "any" disputes under the Agreement are "exclusively" to be resolved through a diplomatic process that

does not involve the judiciary, Plaintiff's claim challenging the implementation of the Agreement presents a non-justiciable question that the Court lacks jurisdiction to consider.

## II.     The Agreement Precludes Judicial Review

Not only does Plaintiff raise a non-justiciable question, but Plaintiff also fails to state a claim under the Agreement itself and under the APA.  Although Plaintiff attempts to enforce the Agreement as he understands it, the Agreement creates no private right of action.  Treaties and executive agreements are "subject to review under the APA" only "when a private right of action is afforded."  *Schieber v. United States*, No. 21-cv-1371, 2022 WL 227082, at *7 (D.D.C. Jan. 26, 2022) (JDB); *see also Comm. of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 942–43 (D.C. Cir 1988) (finding that treaty violations are subject to APA review if actionable by private citizens); *De la Torre v. United States*, No. C 02-1942 CRB, 2004 WL 3710194, at *8–9 (N.D. Cal. Apr. 14, 2004) (stating that treaties and executive agreements are only reviewable under the APA "when a private right of action is afforded").  International agreements presumptively do not create a private right of action, *Medellin v. Texas*, 552 U.S. 491, 506 n.3 (2008), and do so only when the "agreement itself reflects an intent to create judicially enforceable private rights."  *$70,000 Million*, 234 F. Supp. 3d at 237–38; *see also United States v. Mann*, 829 F.2d 849, 852 (9th Cir. 1987) (finding that a treaty may create a private right of action "if it indicates the intention to establish direct, affirmative, and judicially enforceable rights") (internal quotations and citations omitted).  Even international agreements that "directly benefit[] private persons," such as the one at issue here, "generally do not create private rights." *Medellin*, 552 U.S. at 506 n.3 (quoting Restatement (Third) of Foreign Relations Law of the United States § 907 cmt. a (1986)); *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442 (1989) (stating that a treaty that "only set[s] forth substantive rules of conduct and state[s] that compensation shall be paid for certain wrongs . . . do[es] not create

private rights of action for foreign corporations to recover compensation from foreign states in United States courts").

As noted, the instant Agreement expressly commits evaluation of claims and payment of compensation to the sole discretion of the State Department.  *See* Agreement, Article 6.  It further provides that any dispute arising under the Agreement must be settled by way of consultation between the parties to the Agreement — *i.e.*, the governments of France and the United States.  *Id.*, Article 8.  Moreover, the Agreement explicitly states that its intent is to provide "an amicable, *extra-judicial* and non-contentious manner to address the issue of compensation" for eligible claimants.  *Id.*, at ECF p. 7 (emphasis added).  The text of the Agreement thus unequivocally disavows any "intent" to "give rise to affirmative, judicially-enforceable obligations" to any individuals.  *See De la Torre*, 2004 WL 3710194, at *10; *McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485, 488 (D.C. Cir. 2008) (stating that "[t]o determine whether a treaty creates a cause of action," courts should look to the text); *see also id.* at 489 (concluding that a treaty provided no private cause of action even though it "directly benefit[ed]" the plaintiff).  Because the Agreement creates no private right of action, Plaintiff fails to state a claim under the APA.  *See Schieber*, 2022 WL 227082, at *7.

This Court's conclusion is consistent with that of other courts in this jurisdiction, which have dismissed similar claims under the Agreement after determining that it does not confer a private right of action on claimants who are denied compensation by the State Department.  *See Schieber*, 2022 WL 227082, at *7 (dismissing suit brought by claimant under the Agreement because the Agreement "provides no private cause of action" and precludes judicial review); *Faktor v. United States*, No. 20-cv-263, 2022 WL 715217, at *6 (D.D.C. Mar. 10, 2022) (CKK) (dismissing suit brought by claimant under the Agreement because the "lack of a private cause of

action serves as an independent limitation on the Court's review of the government's denial of Plaintiff's claim"); *Gutrejman*, 2022 WL 856384, at *8 (dismissing suit brought by claimant under the Agreement because case raised a non-justiciable political question and because the Agreement "does not bestow any private rights on Fund applicants"). The Court is unaware of any precedent to the contrary.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order will issue this day.

_____
FLORENCE Y. PAN
United States District Judge

Date:   May 13, 2022